UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:11-cr-00074-HA |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| JOSEPH HARVEY BROOKS | |
| Defendant. | |

HAGGERTY, District Judge:

On May 30, 2014, the Ninth Circuit's Judgment in this case took effect, vacating the district court's order authorizing involuntary medication to render defendant Joseph Harvey Brooks competent to stand trial. The Ninth Circuit remanded the case so that this court could conduct another inquiry pursuant to *Sell v. United States*, 539 U.S. 166 (2003). This court conducted the second hearing in this matter on August 6, 2014. For the following reasons, this court continues defendant's previous commitment for treatment [15], grants the government's request for authorization to medicate defendant involuntarily as specified herein, and directs the United States Marshal to transport defendant to the U.S. Medical Center for Federal Prisoners (FMC) in Springfield, Missouri at the earliest opportunity.

1 - OPINION AND ORDER

## BACKGROUND

The Ninth Circuit's opinion in this case explains the history of this matter in detail; therefore, this court will merely summarize those facts. *See United States v. Brooks*, 750 F.3d 1090 (9th Cir. 2014). Defendant Brooks has a lengthy history of mental health issues, including paranoid schizophrenia. In the current case, the government alleges that, on August 24, 2004, defendant attempted to set fire to cables connecting a radio antenna on the roof of Oregon Health Sciences University. Brooks was indicted in 2011, but found incompetent to stand trial. He was admitted into the FMC in Springfield, Missouri on December 16, 2011.

On March 5, 2012, a hearing pursuant to 28 C.F.R. § 549.43, also called a *Harper* hearing, was held to determine if defendant posed a danger to himself or others, such that the involuntary administration of antipsychotic medication was warranted. *See Washington v. Harper*, 494 U.S. 210 (1990). The conclusion was that defendant did not meet the *Harper* criteria.

Next, the government requested a court order to medicate defendant to restore competency for trial, pursuant to *Sell*. On August 7, 2012, this court held a *Sell* hearing in which Dr. Robert Sarrazin opined that defendant suffered from schizophrenia; it was substantially likely that defendant would be restored to competency with antipsychotic medication; and that medication was the necessary treatment to restore competency. Based on this testimony, the court found that each of the *Sell* requirements had been met and granted the government's motion for authorization to medicate defendant involuntarily.

Defendant appealed the court's order. On May 7, 2014, the Ninth Circuit issued an opinion, which held that a remand was necessary so that specific time limitations may be added

2 - OPINION AND ORDER

to the order authorizing involuntary medication and so that the district court could conduct a new *Sell* inquiry due to the amount of time that had lapsed. The Ninth Circuit provided additional guidance concerning the procedures to be followed on remand.

On August 6, 2014, this court held a second hearing on the government's request for authorization to medicate defendant involuntarily in order to restore him to competency for trial. The court heard the testimony of Dr. Robert Sarrazin, M.D., Chief of Psychiatry at the FMC in Springfield, Missouri and Dr. Lea Ann Preston Braecht, Ph.D. The court also heard statements from defendant, defense counsel, and the government.

## STANDARDS

"[A]n individual has a significant constitutionally protected liberty interest in avoiding the unwanted administration of antipsychotic drugs." *Sell*, 539 U.S. at 178 (citation and internal quotations omitted). However, "the Constitution permits the Government involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial," but only if the court determines that four conditions are met. *Id.* at 179. These conditions, which have come to be known as the *Sell* factors, are:

> (1) "that *important* governmental interests are at stake" in prosecuting the defendant for the charged offense;
>
> (2) "that involuntary medication will *significantly further* those concomitant state interests," i.e., it is substantially likely to restore the defendant to competency and substantially unlikely to cause side effects that would impair significantly his ability to assist in his defense at trial;
>
> (3) "that involuntary medication is *necessary* to further those interests," i.e., there are no less intrusive treatments that are likely to achieve substantially the same results; and

3 - OPINION AND ORDER

> (4) "that administration of the drugs is *medically appropriate*, i.e., in the patient's best medical interest in light of his medical condition."

*United States v. Ruiz-Gaxiola*, 623 F.3d 684, 687-88 (9th Cir. 2010) (quoting *Sell*, 539 U.S. at 180-81)). The government bears the burden of satisfying the *Sell* factors by clear and convincing evidence. *Id.* at 692 (citations omitted).

*Sell* also requires that, before a court orders involuntary medication to restore competency for trial, the court must determine "whether the Government seeks, or has first sought, permission for forced administration of drugs on . . . other, *Harper*-type grounds; and, if not, why not." *Sell*, 539 U.S. at 183.

## DISCUSSION

In accordance with the Ninth Circuit's opinion in this case and the standards set forth above, this court begins its analysis by making a specific determination that no other basis for forcibly administering medication is reasonably available. During the August 6, 2014 hearing, the court explicitly inquired as to whether a *Harper* hearing was necessary before it proceeds to a *Sell* analysis. Tr. 4:8-10.[1] Doctor Preston Baecht explained that defendant has "never been physically aggressive toward anyone while in the correctional environment here." Tr. 11:9-11. Similarly, in a forensic report prepared by Dr. Preston Baecht on June 17, 2014, she opined that alternative grounds for the administration of medication were not applicable in this case, because defendant "is not judged to be dangerous to himself or others in this environment." Preston Baecht Report at 7. As Dr Preston Baecht explained, a *Harper* hearing was conducted upon

---

[1] "Tr." refers to the transcript of the *Sell* hearing on August 6, 2014.

4 - OPINION AND ORDER

defendant's first admission to the facility in 2012, and the hearing officer concluded that defendant did not meet the criteria for involuntary medication. Because she determined that defendant's mental health was "essentially unchanged" at the time of his second admission, a second *Harper* hearing was deemed unnecessary. Tr. 14:25-15:15. Doctor Sarrazin agreed with this conclusion. Sarrazin Report at 4. Therefore, the court finds that defendant does not present a danger to himself or others within the medical center and no other basis for forcibly administering medication is reasonably available. Accordingly, the court proceeds with the four factors of the *Sell* analysis.

### 1. The First *Sell* Factor

Under the first *Sell* factor, the court must determine whether there are important governmental interests at stake. Needless to say, the government has an important interest in bringing to trial an individual accused of a serious crime. *Sell*, 539 U.S. at 180. The Ninth Circuit has held that "the likely guideline range is the appropriate starting point for the analysis of a crime's seriousness." *United States v. Hernandez-Vasquez*, 513 F.3d 908, 919 (9th Cir. 2008). In light of this, the Ninth Circuit directed this court to "consider, on the one hand, the potential for and anticipated length of future civil commitment in the event the defendant is not medicated and the amount of time the defendant has already been confined, versus the period of confinement that could reasonably be expected if the defendant were restored to competency and convicted of the charged offense." *Brooks*, 750 F.3d at 1097.

In this case, the crime charged is ten years old and defendant has been in custody for over thirty-eight months. The long duration of defendant's confinement, which would be credited towards any sentence ultimately imposed, weakens the government's interest in prosecution.

5 - OPINION AND ORDER

*Ruiz-Gaxiola*, 623 F.3d at 694. The duration of confinement in this case is shorter than the period in *Hernandez-Vasquez*, where the Ninth Circuit noted that the government's interest in prosecuting a defendant charged with illegally reentering the United States after removal could satisfy the first *Sell* factor, 513 F.3d at 911-12, 919, and it is longer than the period in *United States v. Gillenwater*, 749 F.3d 1094, 1101 (9th Cir. 2014), in which the Ninth Circuit found that the government's interest in prosecuting a defendant for mailing threatening communications satisfied the first *Sell* factor. In consideration of those guidelines, this court finds that the conduct alleged in this case is serious enough to establish an important governmental interest in Brooks' prosecution. Brooks is accused of knowingly and maliciously setting fire to cables connecting a radio antenna on the roof of a medical research building at Oregon Health Sciences University. It is a crime that is potentially dangerous and even life-threatening to the building's occupants. Much like in *Gillenwater*, the government's interest in prosecuting Brooks is "to protect through application of the criminal law the basic human need for security." 749 F.3d at 1101 (quoting *Sell*, 539 U.S. at 180).

The court must note that even when a defendant is charged with a serious crime, "[s]pecial circumstances may lessen the importance" of the government's interest in prosecuting him. *Sell*, 539 U.S. at 180. Brooks contends that there are special circumstances at play here. First, Brooks contends that the government has a diminished interest in prosecuting him because his mental health might make him subject to a lengthy civil commitment if he is not medicated. It is appropriate to raise this issue, as the Ninth Circuit explicitly directed this court to compare Brooks' current period of custody and his anticipated civil commitment if not medicated with his likely prison sentence if convicted. *Brooks*, 750 F.3d at 1097; *Sell*, 539 U.S. at 180 (eligibility

6 - OPINION AND ORDER

for civil commitment may "diminish the risks that ordinarily attach to freeing without punishment one who has committed a serious crime"). However, there is nothing in the record to suggest that Brooks is eligible for civil commitment. Neither doctor was able to offer an opinion as to the potential length of defendant's future civil commitment if he is not medicated, because an evaluation under 18 U.S.C. § 4246 has not yet been performed. Tr. 16:14-23. Additionally, the Ninth Circuit rejected Brooks' argument that the court is required to speculate about whether Brooks would be found not guilty by reason of insanity if he pursued that defense. *Brooks*, 750 F.3d at 1096. Therefore, this court is ill-suited to, and will not, speculate on Brooks' danger to himself or others if released and the potential length of his future civil commitment. *See Gillenwater*, 749 F.3d at 1101 (finding that the government's interest in prosecuting a defendant who threatened to choke, rape, and kill various government officials was not lessened by the potential for a lengthy civil commitment when the experts that evaluated him did not take a position on that issue).

Second, Brooks contends that the government has a lessened interest in prosecuting him because he has already been in custody for thirty-eight months. "[T]he possibility that the defendant has already been confined for a significant amount of time," as *Sell* explained, "affects, but does not totally undermine, the strength of the need for prosecution." 539 U.S. at 180. Here, the government maintains a strong interest in prosecuting Brooks. When the duration of defendant's present confinement (thirty-eight months) is deducted from his likely sentence (sixty months), defendant remains subject to an additional twenty-two months of imprisonment. This period of additional imprisonment is substantial, and the government has a strong interest in

7 - OPINION AND ORDER

seeing that defendant serves the time warranted by the nature of his crime.[2] The court finds this period substantial even if it takes four to eight months to restore defendant's competency, as the experts suggest. Tr. 19:12-14.

Moreover, Brooks' criminal history demonstrates that his delusional thinking can lead to violence toward others, and the government has a substantial interest in protecting the public. On September 28, 2004, one month after the conduct alleged here, defendant was arrested and charged with assaulting a bus driver. During the assault, defendant punched the driver repeatedly in the head, while accusing the driver of being a Nazi and "the synagogue of Satan;" reporting that the driver is wanted for murdering his son and twenty thousand others; and explaining that the FBI instructed him "not to kill her or break her jaw." Forensic Mental Health Report [12-1] at 1-2 (Nov. 4, 2012). As Dr. Preston Baecht opined, "Mr. Brooks' psychotic symptoms are chronic and unlikely to improve in the foreseeable future without treatment with anti-psychotic medication." Preston Baecht Report at 8. Therefore, the government maintains an interest in prosecuting Brooks so that assaults such as this are not repeated in pursuit of defendant's delusions.

The Ninth Circuit has also found it significant in evaluating the government's interest that the defendant may be subject to supervised release if convicted. *Gillenwater*, 749 F.3d at 1101-02. In this case, Brooks may be subject to supervised release, *see* 18 U.S.C. § 3583, which would help to ensure that Brooks' delusions do not lead to additional acts of violence or damage

---

[2] In *Ruiz-Gaxiola*, the Ninth Circuit found that the government maintained an important interest in prosecuting a defendant who was subject to fifty-three to seventy-eight additional months imprisonment after his current period of confinement was deducted from his likely sentence. 623 F.3d at 695. This court finds that Brooks' additional imprisonment of twenty-two months is not sufficiently lower as to warrant a different conclusion.

to property. The monitoring that accompanies supervised release may be especially valuable here, because, as observed by the court, Brooks' delusions continue as of the date of this hearing. *See* Tr. 50: 11-16. Additionally, a conviction in this case would create limitations on Brooks' ability to obtain and possess certain weapons. *See* 18 U.S.C § 922(d)(1), (g)(1); *Gillenwater*, 749 F.3d 1102. This is particularly important to the government because it would prevent Brooks from acting out his delusions in a manner that may cause more severe injury.

It may be argued, though defendant did not, that he was inclined to commit the subject offenses at least in part because of his mental condition and, thus, such a disorder should render it less important to criminally prosecute him. *Ruiz-Gaxiola*, 623 F.3d at 695. The fact that defendant's mental disorder contributed to his offense may weaken the government's interest in prosecuting him, but that will not always be the case. *Id.* In *Gillenwater*, the Ninth Circuit found that the defendant's mental disorder makes his prosecution even more important, because the experts testified that, without medication, the defendant would continue to act on his delusions. 749 F.3d at 1102. Similarly, the record indicates that Brooks' delusions are the cause of his threatening and disruptive conduct, and Brooks' doctors do not anticipate improvement in his mental health without medication. Preston Baecht Report at 5, 8. Accordingly, the court finds a significant risk that Brooks may engage in the potentially dangerous conduct that is the subject of this proceeding if his mental condition is left untreated.

In sum, this court finds that Brooks has been charged with a serious crime and the government has an important interest in prosecuting him. Despite the fact that defendant has already been confined for thirty-eight months, the government maintains an important interest in defendant serving the remaining twenty-two months of his likely sentence, as the record contains

9 - OPINION AND ORDER

no evidence that defendant is eligible for civil commitment absent medication. Therefore, the court finds that the government has satisfied the first *Sell* factor.

### 2. The Second *Sell* Factor

Under the second *Sell* factor, the government must establish that "involuntary medication will *significantly further*" its interest in prosecuting the defendant for the charged offense. *Sell*, 539 U.S. at 181. This factor requires the government to prove two facts by clear and convincing evidence: first, "that the administration of the drugs is substantially likely to render the defendant competent to stand trial;" and second, "that administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair." *Id*.

The parties in this case do not dispute that the government has satisfied its burden in the second factor. Doctor Sarrazin and Dr. Preston Baecht agree that there is a substantial probability that Brooks' competency can be restored with a period of treatment with antipsychotic medication. Sarrazin Report at 17; Preston Baecht Report at 7-8. The doctors also agree that the majority of common and troublesome side effects of these medications can be reduced or eliminated with competent psychiatric oversight and management. Sarrazin Report at 17; Preston Baecht Report at 8. Therefore, this court finds that the second *Sell* factor is satisfied.

### 3. The Third *Sell* Factor

Under the third *Sell* factor, the government must establish "that involuntary medication is necessary to further" its interest in prosecuting the defendant for the charged offense. *Sell*, 539 U.S. at 180-81. This factor requires the government to prove by clear and convincing evidence "that any alternative, less intrusive treatments are unlikely to achieve substantially the same

10 - OPINION AND ORDER

results." *Id.* at 181.

The parties do not dispute that the government has satisfied its burden in the third factor. Doctor Preston Baecht opined that "Mr. Brooks' psychotic symptoms are chronic and unlikely to improve in the foreseeable future without treatment with anti-psychotic medication, which he refuses to accept on a voluntary basis." Preston Baecht Report at 8. She follows that alternative, less intrusive treatments are unlikely to achieve substantially the same results. *Id.* Doctor Sarrazin concurs with that conclusion. Sarrazin Report at 12. Therefore, the court finds that alternative, less-intrusive treatments are unlikely to achieve substantially the same results as medication and the government has satisfied the third *Sell* factor.

4.      **The Fourth *Sell* Factor**

Under the final *Sell* factor, a court may authorize involuntary medication only if "administration of the drugs is *medically appropriate*." *Sell*, 539 U.S. at 181. This factor requires that the government prove by clear and convincing evidence that the proposed regime of involuntary medication is "in the patient's best medical interest in light of his medical condition." *Id.*

Once again, the parties do not dispute that the government satisfied its burden in establishing the fourth factor. Doctor Preston Baecht opined that "it is well-established in the literature that the standard treatment for Mr. Brooks' mental illness is anti-psychotic medication." Preston Baecht Report at 8. Similarly, Dr. Sarrazin explained that "[t]he effectiveness of antipsychotic medication in treating schizophrenia and related psychotic disorders has been repeatedly demonstrated in published professional literature for nearly 50 years, and is considered an essential element in the treatment of these conditions." Sarrazin Report at 12.

11 - OPINION AND ORDER

Therefore, this court finds that the administration of antipsychotic mediation is medically appropriate and the government has satisfied the fourth *Sell* factor.

Because this court finds that the government has satisfied each of the *Sell* factors, it grants the government's request. The Bureau of Prisons treatment personnel must provide defendant with a copy of this order, explain to him the potential side effects of any medication, and attempt to enlist Brooks' cooperation by engaging in a discussion of the available options of taking oral antipsychotic medications on a daily basis at the lowest effective dose. Should defendant agree to take the medication orally, the Bureau of Prisons is authorized to administer to defendant, as medically appropriate, one or more of the following antipsychotic medications in the indicated dosages:

   a.  aripiprazole (Abilify) at 15 mg - 60 mg daily;

   b.  ziprasidone (Geodon) at 80 mg - 320 mg daily;

   c.  riperidone (Risperdal) at 2 mg - 60 mg daily;

   d.  olanzapine (Zyprexa) at 5 mg - 40 mg daily;

   e.  haloperidol (Haldol) at 2 mg -40 mg daily;

   f.  fluphenazine (Prolixin) at 5 mg - 60 mg daily; and

   g.  thiothixene (Navane) at 5 mg - 60 mg daily

In the event that Brooks refuses to take the antipsychotic medication orally, the Bureau of Prisons is authorized to administer involuntarily to defendant antipsychotic medications as detailed in paragraphs two, three, and five of Dr. Sarrazin's Proposed Treatment Plan. Sarrazin Report at 15. The government or defendant may move to alter the court's order as the circumstances change and more becomes known about defendant's response to the medication.

12 - OPINION AND ORDER

This court also orders defendant's continued commitment pursuant to 18 U.S.C. § 4241(d)(2)(A). In consideration of Dr. Sarrazin's report, defendant is ordered confined for the full four month period of treatment as described in 18 U.S.C. 4241(d). Bureau of Prisons is authorized to perform involuntarily any physical and laboratory assessments and monitoring which are clinically indicated to monitor for medication side effects in the event that Brooks refuses to consent to any of these procedures. At the end of the four-month period of treatment, the court will set another hearing to assess the status of defendant's treatment and to determine whether defendant may be returned to the District of Oregon to participate in further proceedings.

## CONCLUSION

The government's request for authorization to medicate defendant involuntarily in order to restore him to competency for trial is granted in accordance with the terms set forth above. The United States Marshal is ordered to transport defendant as soon as possible to FMC Springfield, Missouri, in order to fulfill the terms of this order.

IT IS SO ORDERED.

DATED this 7 day of October, 2014.

Ancer L. Haggerty
United States District Judge

13 - OPINION AND ORDER